### AMES v. MANHATTAN LIFE INS. CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   June 28, 1898.)

**1. INSURANCE—ACTION ON POLICY—EVIDENCE.**

If an application for a policy of life insurance containing the answers made by the applicant, and a so-called "medical examiner's report," which also contains certain answers, and to which the application refers in terms, are contained on different parts of the same paper, the company cannot tear the two apart, and in an action upon the policy, while securing the admission of the former part in evidence under objection, procure the exclusion of the latter part; for the two parts together make up the application.

**2. SAME.**

A life insurance company, when sued on a policy, cannot insist that the contents of a part of the paper containing the application, which it has torn off therefrom, are immaterial.

**3. SAME—APPLICATION.**

If the medical examiner of a life insurance company fills out an application for a policy, which contains a note requiring him to record the answers therein, the testimony of a third person, present at the time, offered on behalf of the plaintiff in an action on the policy, to show that the answers were not correctly written, and what answers were made, is competent.

**4. SAME—WAIVER OF CONDITIONS.**

If a life insurance policy provides that it shall not go into operation unless the insured is in good health at the time of its delivery, testimony of a person, to whom it was delivered by the company's general agent, that he informed the latter at the time that the insured was at home, sick, and that the policy was, notwithstanding, delivered, is competent to establish a waiver of the condition.

Appeal from trial term, New York county.

Action by Edwin A. Ames against the Manhattan Life Insurance Company of New York.   From a judgment entered on a verdict ordered at trial term, plaintiff appeals.   Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, and INGRAHAM, JJ.

George W. Miller, for appellant.

Edward S. Rapallo, for respondent.

RUMSEY, J.   The plaintiff was the assignee of a policy of life insurance issued by the defendant to one Henry A. Ostermoor upon

the life of Ostermoor, payable to his personal representatives, and by Ostermoor assigned to the plaintiff. The defense, substantially, was that there was a breach of warranty by Ostermoor, who made untrue statements in the application. The defendant also claimed that there was an agreement that the policy should not take effect unless it was issued during the good health of the person to be insured, and that at the time it was issued to Ostermoor, on the 4th of December, 1895, he was very sick, and likely to die, and therefore the contract never had an inception. The complaint was dismissed by the learned trial justice at the close of the evidence. Various exceptions to the rulings of the court in the admission and the rejection of evidence were taken by the counsel for the plaintiff during the trial, and he relies upon those exceptions to procure a reversal of this judgment. It is claimed by the learned counsel for the defendant that many of these objections were entirely immaterial. He insists that as the case appeared before the trial court, upon proper testimony, the contract never had any inception; nor can it be disputed that there was a breach of warranty; and for those reasons the rulings upon evidence were entirely immaterial, and need not be considered.

The policy was dated on the 4th of December, 1895. It purports to have been issued in consideration of the application for the policy, and the statements and covenants therein contained, which are a part of the contract, and it insures the life of Henry A. Ostermoor in the sum of $10,000. Certain conditions are printed upon the back of the policy, in which it is stated, among other things, that, if any statement made in the application is in any respect untrue, the policy should be void. There is a limitation of this condition, which need not be considered here. The policy itself contains no provision that it shall not take effect unless it is issued during the good health of the insured; but in what was claimed to be the application, which was offered in evidence and received, there is an agreement by Ostermoor that there shall be no contract of insurance until a policy shall be issued by the company, and accepted subject to the conditions and stipulations therein contained, during the good health of the person to be insured. It appears, therefore, that at the foundation of the defense lies the application for the policy; and the defendant has no standing to establish either of the facts which it relies upon to relieve itself from the liability of this insurance, unless the application is before the court. The application was, by the policy, made a part of the contract; but a copy of it was not attached to the policy of insurance, but it was left to be produced by the defendant upon the trial, if it saw fit to do so, upon notice being given to it. As the application was not in the possession of the plaintiff, the court did not require its production by the plaintiff while it had the case, but it was produced and offered in evidence by the defendant. It appeared that the application covered the first two pages of a sheet of four pages of paper. The part of it which is called by the defendant the "application" contained 90 paragraphs. On the third page was what it called the "medical examiner's report of the personal examination," which contained many paragraphs, commencing with No. 91. The first two pages, upon which the application was put, con-

tained several references to the numbers on the third and fourth pages. The application was taken down in writing by the medical examiner, who also filled out what is called the "medical examiner's report." It appeared from an inspection of the papers, and from the medical examiner's statement, that, while the answers made by the applicant were put upon the first and second pages of the paper, there were put in proper spaces on the third and fourth pages one or more statements made by the applicant to the medical examiner at the time of making the application, and which qualified those answers. Whether those answers and qualifications were very material, does not clearly appear, and is not, in our judgment, of the slightest importance. It is sufficient that they constituted a part of the information which was given to the medical examiner by the applicant at the time the application was made, and qualified the application, and were put upon the same piece of paper on which the application itself was written. When the defendant came to offer what it was pleased to call the "application" in evidence, it appeared that, after that paper had been sent to the defendant's office by the medical examiner, it had been torn in two; the first two pages, called the "application," being offered in evidence, and the other two pages not being produced for that purpose by the defendant at that time. It also appeared that one of the officers of the defendant, after the application had been presented to him, and without the knowledge of Ostermoor, had altered it in another respect, by striking out the statement made by Ostermoor, that he desired an ordinary life policy, and putting in that the kind of policy desired was a "twenty payment H. Y. W. policy," the meaning of which was not clear. The policy which was issued did not agree in its terms with the one asked for by the application; for it was not an ordinary life policy, and the amount of premium required to be paid for it was considerably larger than the applicant had proposed to pay in the policy for which he made an application.

These facts having appeared, when the portion of the application produced by the defendant was offered in evidence an objection was taken by the plaintiff to its reception, upon the ground that it did not purport to be an application for the policy on which the action was founded, and that it did appear that it had been changed, altered, mutilated, and written upon, so that it was inadmissible. This objection was overruled, and the portion of the application presented by the defendant was offered in evidence. The plaintiff subsequently endeavored to put in evidence the remainder of this paper which had been torn off, but it was unable to do so; his offer of it having been objected to, and the objection sustained. For that reason there was only in the case, and present for the consideration of the court, that portion of the paper which the defendant saw fit to call an "application"; and there was excluded from its consideration the other portion of the paper, which was a part of it at the time when the application was made, and which, confessedly, contained certain statements that were given to the medical examiner as a portion of the application, and by him put upon paper as constituting the answers of the applicant. The question is thus presented whether it is proper for a person to whom a paper has been pre-

sented as an application for a contract, and which is the foundation and part of a contract entered into between the parties, to tear it in two, and present a portion of the mutilated paper as containing the whole of it, and preclude the other party from having the whole paper before the court. The question is important, not only because it bears upon the rights of the parties in this action, but because it seriously concerns the rights of every person who is bound by a paper, to have the unmutilated and unchanged paper presented to the court whenever his rights are sought to be affected by it. It appeared clearly that the first two pages which were presented were not the complete paper that had been sent by the applicant to the company. It appeared, also, that certain portions of his statements were written upon the other part of the paper. When that appeared, it was clearly the right of the plaintiff to insist that the whole paper should be presented. The defendant says that the portion of the paper which was presented alone constitutes the application. But that is not true. The whole paper which was before Ostermoor at the time he signed it, and upon all portions of which his statements were made, and which contained the physical examination made of him at the time,—giving, as it appears, various answers made by him to the doctor at that time,—constitutes the application. Holden v. Insurance Co., 11 App. Div. 426, 42 N. Y. Supp. 310. But, if that were not so, it was not for the defendant to say that those portions which were torn off were of no materiality. A party cannot thus preclude his opponent from having the judgment of the court upon the whole paper which he presents to his opponent as the basis of a contract. It is for the court to say whether the statements are material or not, and for that purpose the party is bound to have the whole paper upon which statements are made presented to it. The case cannot be prejudged by one party who mutilates a paper. If he is at liberty to destroy a portion of a paper because he thinks it is of no importance, he is at liberty to destroy any other portion of it, and compel his opponent to rely upon parol evidence of the portion which he sees fit to destroy, in order to enable the court to say whether or not it is material. Such a rule could never, with safety, be applied. The rule is well settled that, when one alters a paper of his opponent, he must explain the alteration, before the portion which he alters shall be received in evidence. Chase's Steph. Ev. art. 89. Much more is that the rule where, as in this case, the party relying upon the paper has torn it in two, and endeavors to, and does, suppress a portion of the contents of it, upon an allegation that they do not affect the rights of the parties. The medical examiner, who took down the answers of the applicant to the application signed by him, also, as he says, made at the same time a personal examination, which was contained upon the remaining portion of the paper. That remaining portion was offered in evidence and excluded, but is printed in the case. An examination of that paper shows that it contains certain information which must have been obtained either by the answers of the applicant, or by a personal measurement or examination made at the time the application was made; and it also contains, as has been already stated, a portion of

the answers partly entered upon the other part of the application. It is clearly altogether a record of one transaction, and the plaintiff was justified in his objection to the reception of a portion of that paper which ought to have been excluded at the time it was offered.

It appeared in the case that the person who took down the application was the regular medical examiner of the defendant, that he was sent by the agent to take the application, and that a note in the application which was offered and received requires the medical examiner to record the answers beginning at No. 15, and ending at No. 88. The plaintiff offered to show, with regard to these questions, upon which the claim of a breach of warranty was made, that true answers were given by the applicant, but that the medical examiner did not take them as they were given, and to show precisely what answers were given by the applicant at that time. This was done by a series of questions addressed to a person who testified that he was present at the time the application was given. It was objected to, and the objection was sustained. We are of the opinion that this evidence was competent. The medical examiner who was engaged in taking the testimony had been sent there for that purpose by the agent of the defendant, and it was he whom the defendant, by the instructions given to the applicant in the paper itself, authorized to fill out the answers. He was clearly the agent of the defendant for that purpose, and, within the well-settled rules, it was competent to show that true answers were given to him as to the condition of the applicant. Flynn v. Society, 78 N. Y. 568; Grattan v. Insurance Co., 80 N. Y. 281, 92 N. Y. 274; Insurance Co. v. Wilkinson, 13 Wall. 222.

This application was dated on the 15th day of November, 1895. The plaintiff offered in evidence a letter dated November 21, 1895, signed by the second vice president of the company, brought to Ostermoor by the agent who took his application, declining to issue a policy upon that application at that time; and he proposed to show, in connection with that letter, that the agent who brought it told Ostermoor the terms upon which the policy would be issued. Taken in connection with the declination to issue a policy upon the application as it stood, and with the fact that, after the application had been put into the hands of the insurance company, it was altered by somebody connected with the company, we think this evidence was competent, as tending to show precisely what was the nature of the application upon the faith of which the policy was issued; and it comes within the principles laid down in the cases just cited, which authorize parol evidence of statements made by the applicant to the agents of the company engaged in procuring the policy upon the faith of which the contract was made.

It appeared that the contract was not delivered to Ostermoor, but that it was brought by the agent of the company to his office, and there delivered to Ames; Mr. Ostermoor not being then at the office. The plaintiff offered to show what was said to the agent by Ames as to the condition of Ostermoor at that time, and as the reason why he was not present at his office. This was offered in view of the claim made by the defendant that Ostermoor was not in good health when

the policy was delivered to him, and that, therefore, it never took effect; the plaintiff claiming that it would appear from this testimony that the agent was told by Ames that Ostermoor was sick, but that he nevertheless delivered the policy to him, and that such delivery constituted a waiver of those conditions, upon which alone it was insisted the policy could take effect. We are of the opinion that this evidence should have been received. It is fairly to be inferred from all the testimony that Zimmerman was the general agent of the company to take applications and deliver the policies; and, if he was such agent, his act in waiving a condition was undoubtedly within his power, and might have been proved. Wood v. Insurance Co., 149 N. Y. 382, 44 N. E. 80.

It is claimed by the defendant that the policy was void upon its face, as a wager policy, because it says that the evidence established that the policy was made for the benefit of Ames; the agreement between Ames and Ostermoor being that each should insure his life for the benefit of the other. It is sufficient, upon that point, to say that the policy was made payable to the legal representatives of Ostermoor, and it was delivered to Ostermoor. If the delivery took effect, it clearly then became a valid contract; and it is well settled in this state that when a policy of life insurance has been issued, which is valid in its inception, an assignee of that policy may maintain an action upon it.

The judgment should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.