GENUNG v. METROPOLITAN LIFE INS. CO.

(Supreme Court, Appellate Division. Second Department. April 19, 1901.)

1. INSURANCE—SUIT ON POLICY—DELIVERY—PROOF—MOTION TO DISMISS.
   Where the physical delivery of a policy was undisputed, and the company's agent had authority to deliver policies on his own judgment as to insured's good health, and insured subsequently paid the premium by check, a motion to dismiss the complaint, in a suit on the policy, on the ground that the evidence was insufficient to go to the jury on the question of delivery, was properly denied.

2. SAME—CONDITIONS—HEALTH AT DELIVERY—BREACH—DIRECTION OF VERDICT.
   Where a policy provided that it should not be valid unless insured was in sound health on its delivery, and the insuring company's agent, who was authorized to deliver the policies on his judgment of insured's good health, delivered a policy to insured, on a public street, who, though he had been to a doctor the day before, was regularly attending to business, a motion to direct a verdict for the company, in a suit on the policy, on the ground of a breach of such condition as to health, was properly denied.

3. SAME—SUBMISSION OF SOME ISSUES—SPECIAL VERDICT.
   The only issues in a suit on a policy were delivery of the policy, and the good health of the insured at certain stated times. None of the facts material to the first issue were controverted. The court submitted five questions as to the health of the insured to the jury, and, adopting its findings thereon, rendered judgment for the plaintiff. There was no request to submit any other questions, or that the case be submitted in any other form. There was no agreement that there should be a special verdict. *Held*, that such judgment was not void, as rendered on a special verdict not covering all the issues of fact litigated.

   69 N.Y.S.—66

4. SAME — PREMIUM — DEFERRED PAYMENT — AGENT'S AUTHORITY—CONSUMMA-
TION OF CONTRACT.

Where an agent of an insurance company, who had general power to
take applications, deliver policies, and collect premiums, delivered a pol-
icy to the insured, and told him that he had 30 days in which to pay the
premium, and the insured subsequently delivered his check for the
amount of the premium to the agent, the waiver of a spot-cash payment
of the premium was within the agent's power, and the contract of insur-
ance was consummated, in the absence of fraud.

5. SAME—WARRANTY—HEALTH AT CERTAIN TIME—BREACH—EVIDENCE.

Where, under the warranty clause in a policy, the insured stated that
he was last under a doctor's care in 1895, and the doctor testified that he
had treated the insured in January, 1899, but was not very sure about
the matter, and the beneficiary testified that insured came into the house
where the doctor was attending the family for la grippe, and was given
some medicine for a cold, the finding that there was no breach of war-
ranty was supported by the evidence.

Appeal from trial term, Dutchess county.

Action by Mary E. Genung against the Metropolitan Life Insur-
ance Company. From a judgment in favor of plaintiff, defendant
appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-
BERG, JENKS, and SEWELL, JJ.

C. N. Bovee, Jr., for appellant.
C. Morschauser, for respondent.

WOODWARD, J. Mary E. Genung, widow of Lewis White Ge-
nung, of Johnsville, this state, brings this action to recover upon a
policy of insurance written by the Metropolitan Life Insurance Com-
pany for $2,000 upon the life of her husband, and for her benefit.
The defendant claims that the policy was never delivered by it, that
no first premium was ever received by it, and that consequently the
contract of insurance never had an inception. It is also urged that
the plaintiff's husband was guilty of breaches of warranties. Upon
the trial of the action the learned court submitted certain specific
questions to the jury, and upon the verdict rendered a judgment in
favor of the plaintiff, from which appeal comes to this court.

Fred L. Genung, a son of Lewis White Genung, was employed by
the defendant as its agent in soliciting life insurance, and in deliver-
ing and receiving the money for such policies. The superintendent
of the defendant testified as to the custom of the company that
"the assistant usually gives the policy to the agent, and he takes
it out, and, on his own authority as to the good health of the insured,
he delivers the contract and collects the money." While acting as
such agent, Fred L. Genung procured an application for insurance
from his father, Lewis White Genung. This application was made
on the 29th day of July, 1899; and on the 17th day of August, in the
same year, a policy of insurance was written by the defendant, and
by its district superintendent placed in the hands of Fred L. Genung
for delivery in the manner described above. With this policy was a
receipt in the usual form for the annual payment of $115.20, signed
by the secretary of the company, and dated August 17, 1899, counter-
signed, under date of September 5, 1899, by J. K. Voshell, the dis-

trict superintendent.   The policy was not delivered to the deceased until the 23d day of August, at which time the agent of the defendant testifies that he met Lewis White Genung in the city of New York, upon a public street, and handed him the policy.   The insured offered to pay the premium at that time, according to the testimony, but, as it was near train time, the agent told him that it was not necessary; that he had 30 days in which to make the payment.   There is a provision in the policy that "no obligation is assumed by this company upon this policy until the first premium has been paid and the policy delivered, nor unless upon the date of delivery the insured is alive and in sound health"; and this is the contract which was entered into by the deceased, and not the provision set forth on the face of the receipt,—that it was not to be "binding upon the company until countersigned by the cashier of the ordinary department, at the home office, or the superintendent of the district in which the payment is made, nor until the premium has actually been paid in cash."   It appears from the evidence that on the 22d day of August, 1899, the deceased, at the request of his wife, visited Dr. Conklin, who prescribed for him on that occasion; but it was also in evidence that deceased continued about his business, and that he visited New York on the following day, where he received the policy from the defendant's agent, who is conceded to have been authorized to deliver the policy upon his own judgment as to the good health of the insured.   While it may not be said that this is so far conclusive upon the defendant as to prevent any question being raised, it can hardly be doubted that it was a question which the jury were authorized to determine whether the deceased was in such a condition as to warrant the agent in assuming that he was in that degree of health fairly contemplated by the parties.   Cushman v. Insurance Co., 70 N. Y. 72, 77.   On the 5th day of September, the insured having in the meantime continued to receive the attention of his physician, the check of Lewis White Genung was drawn, payable to the order of the defendant's district superintendent, and by the company's agent forwarded in a letter to one of the employés of the defendant company.   This check was not returned until after the death of the insured, which occurred on the 25th day of September, 1899.

The learned trial court submitted five questions to the jury,—it appearing from the evidence that the policy, when delivered as prescribed by the regulations of the company, related back to the date of the contract,—which, with the answers given, are as follows:

"First. Was the deceased in sound health on August 23, 1899?   Answer: Yes.   Second. Was the deceased in sound health on August 17 and 18, 1899? Answer. Yes.   Third. Was the deceased in sound health on September 5, 1899? Answer. Yes.   Fourth. Did the deceased suffer from an illness in January, 1899?   Answer. No.   Fifth. Did the deceased have a medical attendant for any illness in January, 1899?   Answer. No."

The defendant urges, as a preliminary question, that this amounted to a special verdict, and that, as all of the issues were not disposed of by the jury, there are no sufficient facts on which to found the judgment.   We are of opinion, however, that this is a mistaken

view of the matter, and that the defendant is not in a position to raise the question. Defendant's counsel at the close of the evidence moved to dismiss the complaint upon the ground that the plaintiff had failed to prove a delivery of the policy. This motion was denied, and defendant took an exception. If there was any evidence of the delivery of this policy, the court could not, as a matter of law, dispose of the question upon a motion to dismiss the complaint, and it cannot be doubted that there was evidence of such delivery. The evidence of its physical delivery to the deceased was not disputed, and the defendant conceded that its agent was authorized to deliver the policy upon his own judgment as to the state of health of the insured, and there was evidence of the payment on the part of the insured to the agent of the company in the manner customary in the conduct of ordinary business affairs,—by means of the deceased's check. The defendant's counsel then moved to dismiss the complaint on the ground that there was already an express violation of the conditions of the policy in respect to sound health. At this point the court announced that it would submit some questions to the jury; and counsel for defendant excepted to the denial of the motion to dismiss upon this last ground, and asked for the direction of a verdict for the defendant upon the breach of warranty and breach of conditions, and excepted to a denial of this motion. The court then stated the questions given above, and defendant's counsel excepted to the submission of each and every one of these questions to the jury. There was no request to submit any other questions to the jury, or that the case be submitted to the jury in any other form (Carr v. Carr, 52 N. Y. 251, 255); and the position of the defendant is merely that of asking the court to dispose of all of the questions, either of fact or law, upon its motions outlined above. It was not proposed by the court or assented to by counsel that there should be a special finding of the facts, leaving solely to the court the application of the law to the facts; but the court called upon the jury to determine five specific questions, upon which must depend the disposition of the case, and the defendant is hardly in a position to complain because the court preferred the judgment of the jury upon the facts to its own. It is not to be doubted that the court, upon the conceded facts, might have directed a verdict for the plaintiff, in so far as the question of the delivery of the policy is concerned. It was purely a question of law, none of the material facts being controverted. See Code Civ. Proc. § 1185. The remaining facts involved in the defendant's motion were submitted to the jury, and, as we have already pointed out, there was evidence to support the findings of the jury. There was no error in the denial of the defendant's motions either to dismiss or to direct a verdict, and the record discloses all of the material facts necessary to support the judgment. Carr v. Carr, supra.

The defendant urges that the contract of insurance never came into life, because two essential elements—due delivery of the policy to the insured, and payment by the insured of the first premium—never took place. But we are of opinion that, under the conceded facts, Fred L. Genung was the general agent of the company to

take applications and deliver the policies; and, if he was such agent, his act in waiving a condition was undoubtedly within his power. Ames v. Insurance Co., 31 App. Div. 180, 52 N. Y. Supp. 759; Id., 40 App. Div. 465, 468, 58 N. Y. Supp. 244. The physical delivery of the policy by the defendant's agent, the offer of the deceased to pay the premium at that time, and its deferment on the assurance of the company's agent that the insured had 30 days in which to make the payment, and the subsequent delivery of decedent's check to the agent of the defendant, constituted in law a consummation of the contract, and imposed a liability upon the company, unless fraud is established. While the relationship between the insured and the defendant's agent might be taken into consideration on the question of fraud, it is evident from the testimony that the company was aware of the relationship; and there is no reason for concluding that at the time the policy was delivered, and accepted by the insured, the agent of the company had any reason to believe the risk was not a legitimate one. The offer of the insured to pay the money at the time of the delivery of the policy was an evidence of the consummation of the contract, and the mere deferring of the payment did not affect the question of the delivery; it being within the apparent scope of the agent's authority. Tooker v. Trust Co., 26 App. Div. 372, 376, 49 N. Y. Supp. 814.

There was a conflict of evidence as to whether the insured was treated by a physician in January, 1899; he having answered questions 3 and 4 in the insurance application in a manner to raise this as one of the issues. His answers, which were given under the general warranty clause in the policy, stated, in effect, that he was last under the doctor's care for la grippe in 1895; that it was the last time he was confined to the house by illness. Dr. Conklin testified that he had treated the insured in 1896, and again in January, 1899, but he was not very certain about the matter; and it was in evidence that the treatment was merely for a slight indisposition,—a cold,—which did not take the insured from his business. He had come into the house from his stores, according to the plaintiff's version of the matter, where the doctor was attending the family for la grippe, and had been given some medicine for a cold. Under the authorities, this does not constitute a breach of the warranty (Dilleber v. Insurance Co., 69 N. Y. 257, 262; Cushman v. Insurance Co., supra, and authorities there cited), and the jury were alone competent to pass upon this question.

We have examined the remaining questions, without finding reversible error.

The judgment and order appealed from should be affirmed, with costs. All concur.