THE TRAVELERS INSURANCE COMPANY v. LAMPKIN.

1. INSURANCE POLICY—WARRANTIES.

Where the language of the policy of insurance was " The Travelers Insurance Company * * * in consideration of warranties in application for this policy * * * does hereby insure," etc., *held:* This was sufficient to make the warranties in the application a portion of the policy.

2. SAME—STATUTORY CONSTRUCTION.

The requirement of the statute (Mills' An. Stats., sec. 2232) that certain contracts of insurance must be plainly expressed in the policy, was intended to prohibit secret agreements of insurance companies with certain of their patrons, whereby the latter would obtain some concessions or advantages over others of the same class and equal expectations of life.    Such agreements are required to appear in the policy, but not warranties or statements of the insured which are conditions of the insurer's liability.

3. INSURANCE—WARRANTY.

Where a statement in an application for insurance is a warranty, and therefore a part of the contract, the question of its materiality does not arise, and unless the proof shows that it is literally true, there can be no recovery on the policy; whereas a representation is merely a portion of the preliminary proceedings proposing the contract, operating, if material, as an inducement to the execution of the policy.

4. SAME.

In order that the falsity of a representation in an application for insurance may be a defense to an action on the policy, its subject-matter must be something which the insurer was entitled to know and which would probably have influenced it in determining whether it would enter into the contract.

*Appeal from the District Court of Las Animas County.*

.    Messrs. YEAMAN & PARSONS, and Mr. FRANK E. GOVE, for appellant.

Mr. EVERETT BELL and Mr. W. B. MORGAN, for appellee.

THOMSON, J., delivered the opinion of the court.

The complaint sets forth a policy of insurance issued by The Travelers Insurance Company to Joseph R. Lampkin on the 22d day of November, 1891. The policy, which is denominated an accident policy, provides for the payment to Lampkin of a weekly sum for loss of time, not exceeding twenty-six consecutive weeks, resulting from bodily injuries accidentally received during the term of insurance; and contains, in addition, the following agreement: "or, if death results from such injuries alone within ninety days, will pay two thousand dollars to Mrs. Lou Lampkin (wife), if surviving; in the event of her prior death to the legal representatives or assigns of the insured." The complaint alleges that on the 8th day of December, 1891, Lampkin received an accidental bodily injury which alone caused his death on the following day, avers the fulfillment by Lampkin of all the conditions of the policy, and the giving by plaintiff to the defendant of notice and proof of Lampkin's death in accordance with the terms of the policy.

The consideration as expressed in the instrument was, among other things, warranties in the application for the policy. One of the defenses interposed was that a written application for the policy was made by Lampkin to the defendant; that in this application he made certain statements as the basis for the policy, which he warranted to be true; that upon the faith of these statements the policy was issued and delivered to him; that among the statements was one that Lou Lampkin was his wife; that this latter statement was false, and known by Lampkin to be false at the time it was made; that Lou Lampkin was not his wife; that his lawful wife was Carrie Lampkin, whom he had abandoned, and that at the time of the application he was living in adultery with Lou Lampkin; that these facts were material to be known to the defendant, and material to the risk

assumed in issuing the policy; and that if they had been known to the defendant the policy would not have been issued. A demurrer was sustained to this defense for insufficiency. The cause went to trial, which resulted in a verdict and judgment for the plaintiff, and from which the defendant has appealed.

There is considerable controversy between counsel as to the effect of the recital in the policy that it was in consideration of warranties in the application; defendant's counsel contending that this reference to the application imports it into the policy, and makes the two one contract. On the other side, however, it is argued that the words used in the policy with reference to the application, are not sufficient to make it part of the policy, and that, therefore, the statements which it contains are not warranties. The following is the language of the policy referring to the application: " The Travelers Insurance Company of Hartford, Conn., in consideration of warranties in application for this policy * * * does hereby insure Joseph R. Lampkin," etc. We think this language sufficient to make the warranties in the application a portion of the policy. One of the elements of a contract is its consideration. The expressed consideration was, among other things, certain warranties of the insured in the application made by him for the policy. The warranties are not set forth in the policy, but it specifies the application as containing them. To ascertain what they are involves an inspection of the application. The policy, as a contract, is incomplete without them; and the application, therefore, to the extent of the warranties which it contains, is necessarily a part of the instrument.

But it is further contended that, pursuant to a provision of our statute regulating insurance companies doing business in this state, the warranty relied on is not available as a defense to the action, because it is not plainly expressed in the policy itself. The provision referred to is contained in section 2232, Mills' An. Stats. That section is as follows:

" No life insurance company doing business in the state of

Colorado shall make or permit any distinction or discrimination in favor of individuals, between insurants (the insured) of the same class and equal expectation of life, in the amount of payment of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes. Nor shall any such company or any agent thereof, make any contract of insurance or agreement as to such contract other than as plainly expressed in the policy issued thereon; nor shall any such company or agent pay or allow, or offer to pay or allow, as inducement to insurance any rebate of premiums payable on the policy, or any special favor or advantage in the dividends or other benefits to accrue thereof, or any valuable consideration or inducement whatever not specified in the policy contract of insurance. The penalty for violating this section shall be a fine of two hundred and fifty dollars; and the superintendent of insurance shall revoke the certificate of authority of any agent convicted of the violation of this act, and shall not grant the agent so convicted a license as agent for the term of three years thereafter."

Construing the foregoing section as a whole, we do not think it was intended to apply to a case like this. It was the evident purpose of the legislature to prohibit secret agreements of insurance companies with certain of their patrons, whereby the latter would obtain some concessions or advantages over others of the same class and equal expectation of life, either in the cost of insurance, or in the accruing benefits; and it is against the manifest unfairness of such discrimination that the statute was aimed. Such agreements must appear in the policy, but not warranties or statements of the insured which are conditions of the insurer's liability. In some states, by statute, a copy of the application is required to be set forth in, indorsed on, or attached to, the policy, otherwise the company cannot avail itself of false statements in the application as a defense; and in those states it has accordingly been held that to enable the com-

pany to rely upon such statements, the statute must be complied with. *Dunbar v. Phœnix Ins. Co.*, 72 Wis. 492; *Cook v. Fed. Life Ass'n*, 74 Iowa, 746; *R. R. Co. v. Relief Ins. Co.*, 98 Mass. 420; *Imperial Ins. Co. v. Dunham*, 117 Pa. St. 460. We have been cited by counsel to some of these cases as decisive of the question we are considering; but the statutes upon which the decisions are based, in their language, requirements and purposes, differ so widely from our own that they are of no value as authorities here.

But if we grant that the effect of the statute is as counsel contend, we do not see how the plaintiff is to profit by the concession. The very utmost that can be claimed for the language employed is that it invalidates any contract of any kind between the company and the insured which is not plainly expressed in the policy. This construction would exclude the statements in the application from the policy. They would constitute no part of the contract of insurance. No matter what their language, they could not be warranties, because a warranty in insurance is necessarily a part of the policy. Therefore the statements averred in the answer, not being expressed in the policy, and so not being warranties, must be treated as representations merely. Where a statement is a warranty, and therefore a part of the contract, the question of its materiality or immateriality does not arise; and unless the proof shows that it is literally true there can be no recovery on the policy; whereas a representation is no part of the contract; it is merely a portion of the preliminary proceeds proposing the contract, operating, if material, as an inducement to the execution of the policy, and it need not even be in writing. In order that its falsity may be a defense, its subject-matter must be something which the insurer is entitled to know, and which will probably influence it in determining whether it will enter into the contract. *Campbell v. N. E. Mut. Life Ins. Co.*, 98 Mass. 381; Bliss on Life Ins., sec. 35.

If the answer as a plea of warranty is bad, it nevertheless sufficiently sets forth a false representation. A representa-

tion, being no part of the contract, does not under any construction come within the purview of the statute; and, if it relates to a material fact, is entirely available as a defense, notwithstanding the statute. The question of the materiality of the statement set forth is therefore important. This was an insurance against accidental injuries suffered by the insured, with an agreement to pay a certain sum to the plaintiff in the event that death ensued. The charge is that the plaintiff was not his wife; that he had a lawful wife, whom he had abandoned; that he was living in adultery with the plaintiff; and that the representation that she was his wife was not only false, but fraudulent. Accepting the averments of the answer, the plaintiff and the insured were living together in violation of law, and in defiance of the principles of morality; and we do not see how it can be said that a man, whose course of life is vicious, is as desirable a subject for insurance, even against accident, as one whose habits are well ordered and correct. It is a matter of common observation that, with depraved instincts and habits, there is often associated a recklessness, a want of caution, a disregard of consequences, not usually found in persons whose lives conform to the laws of morality; and it seems clear to us that the defendant was entitled to know the actual relations existing between the insured and the plaintiff, as materially affecting the character of the proposed risk. We have been referred to the case of *Vivar v. Knights of Pythias*, 52 N. J. 455, as holding an exactly contrary doctrine. The suit was upon certificates of insurance issued to Darius Vivar by the Supreme Lodge of Knights of Pythias of the World. In his application, in answer to the question, " State definitely to whom you wise the benefit made payable, and relationship to you," he said, " to my wife, Emily Louisa Vivar." The latter was the plaintiff in the suit. Evidence, offered to show that before and at the time of the plaintiff's marriage to Vivar he had a lawful wife living, and both he and the plaintiff knew it, was rejected by the trial court, and the ruling was approved by the supreme court. The language of

the certificates was that the supreme lodge would pay the sum insured "to Emily Louisa Vivar, his wife, as directed by said Brother Vivar in his application, or to such other person or persons as he may subsequently direct by will or otherwise." It would appear from this language that it was a matter of entire indifference to the lodge to whom the money should be payable. The insured was not bound by the direction in the application, but might subsequently change it. The relationship between himself and the plaintiff must have been regarded as of no importance, because the contract left to his absolute discretion the disposition of the money; and, upon his direction, it was payable to any person whomsoever. And this is the precise ground upon which the court based its decision. It held that a subject thus committed to the control of the insured was not material to the contract of the insurer, nor so regarded by the insurer; that it was evident, that if Vivar had declared Emily not to be related to him, the contract would nevertheless have been made as it was made; and that any relationship, or want of relationship, between him and the plaintiff, was made, by the express terms of the certificates, immaterial.

It is manifest that that decision has no application to this case. By the terms of this policy, in case of Lampkin's death from such cause, and within such time, as the policy specifies, the insurance money was payable absolutely to the plaintiff if she survived him. No discretion, as to the beneficiary, was left in Lampkin, and there is nothing in the policy from which it can be inferred that the defendant did not regard the subject of Lampkin's relationship to the plaintiff as material.

We think that a warranty was well pleaded in the answer, so that the materiality of the statement is not in question. We also think that a false and fraudulent representation as to a material fact is sufficiently set forth; and whether the statement may be regarded as a warranty, or as a representation, the effect is the same. Either is sufficient to defeat the action. It was error to sustain the demurrer, and the judgment must be reversed.

*Reversed.*