HOLDEN v. METROPOLITAN LIFE INS. CO.

(Supreme Court, Appellate Division, Third Department. December 2, 1896.)

1. LIFE INSURANCE—APPLICATION—STATEMENTS TO MEDICAL EXAMINER.
    The statements made to a medical examiner, by an applicant, and attached to the application, the truth of which is warranted by the applicant, is part of the application, within the meaning of a condition in the policy that all the answers and statements contained in the application therefor are made part of the contract.

2. SAME—TESTIMONY OF PHYSICIAN—WAIVER OF PRIVILEGE.
    Under Code Civ. Proc. §§ 834, 836, declaring that information acquired by a physician while attending a patient in his professional capacity, and which was necessary to enable him to act in such capacity, shall not be disclosed unless the privilege be expressly waived at the trial or examination, by the patient, a written stipulation by an applicant for insurance, waiving the benefits of such provisions, estops his representatives from objecting to the testimony of a physician as to his knowledge of the health of the assured, obtained while attending him in a professional capacity.

Appeal from circuit court, Saratoga county.

Action by Mary C. Holden against the Metropolitan Life Insurance Company. From a judgment entered on a verdict directed for defendant, plaintiff appeals. Affirmed.

Argued before PARKER, P. J., and HERRICK, PUTNAM, and MERWIN, JJ.

Edgar T. Brackett, for appellant.
John De Witt Peltz, for respondent.

MERWIN, J. This action was brought upon a policy of insurance issued by the defendant on the 29th May, 1893, upon the life of Charles E. Harris, in the sum of $2,500, payable to his legal representatives. The plaintiff, by assignment from Harris and from his legal representatives, is the owner of whatever is recoverable on the policy. In the answer, it is alleged, by way of defense, among other things, that in the application made by Harris, which was a part of the contract of insurance, he warranted that none of his brothers had ever had consumption, whereas, in truth and in fact, one James H. Harris, a brother of Charles, had consumption, and died thereof in March, 1885; that in said application Harris also warranted that he had never had bronchitis, whereas, in truth and in fact, he had had it prior to making the application. Evidence was given at the trial upon these issues, and the defendant also claimed there was a breach of warranty, in that, before the issuing of the policy, the assured was attended and treated by Dr. Sweetman for dyspepsia. At the close of the trial, the defendant moved that the court direct a verdict in its favor, upon the grounds, among others, that, upon the uncontradicted evidence, it was shown that a brother of the assured had consumption, and also that the assured had bronchitis prior to the application, either of which contingencies would be a breach of warranty, and avoid the policy. The court held these grounds to be well taken, saying, in substance, that a verdict to the contrary would not be sustained by the evidence. Upon the evidence, the court was, I think, correct in reaching the conclusion it did.

It is, however, claimed by the plaintiff that the statements upon which these breaches of warranty were based were not in the application, and so no part of the contract of insurance, and that, therefore, although they were in the statements made to the medical examiner, they were only representations, and, although false, would not necessarily avoid the contract. Owens v. Insurance Co., 56 N. Y. 565. It does not seem to have been claimed at the trial that the statements in question were not a part of the contract. The motion by defendant for a direction of a verdict was made upon the theory that they were, and the court, in deciding it, acted on that theory. The plaintiff excepted generally to the ruling, and asked to go to the jury on each one of the questions, and on the whole case. It was not suggested that, if the statements were false, it was still a question for the jury. Is the plaintiff correct in his position that the statements were not a part of the contract of insurance?

Upon the trial, the plaintiff offered in evidence the original application, and it is in the record as Plaintiff's Exhibit A. This comprises, first, divers questions and answers, under the head of "Ap-

plication to the Metropolitan Life Insurance Company," which at the end is dated May 11, 1893, and purports to be signed by Charles R. Harris. Then comes divers questions and answers under the head of "Statements Made to the Medical Examiner." Then comes a statement, called a "Warranty," dated May 11, 1893, and purporting to. be signed by Harris, the material portions of which are as follows:

"It is hereby declared, agreed, and warranted by the undersigned that the answers and statements contained in the foregoing application, and those made to the medical examiner, as recorded in parts A and B of this sheet, together with this declaration, shall be the basis and become part of the contract of insurance with the Metropolitan Life Insurance Company; that they are full and true, and are correctly recorded; and that no information or statement not contained in this application, received or acquired at any time by any person, shall be binding upon the company, or shall modify or alter the declarations made in this application; * * * that any false, incorrect, or untrue answer, any suppression or concealment of facts in any of the answers to the foregoing questions, any violation of the covenants, conditions, or restrictions of the policy, any neglect to pay the premium on or before the date it became due, shall render the policy null and void, and forfeit all payments made thereon; that the policy hereby applied for shall not be in force until the actual payment to and acceptance of the premium by the company during the lifetime and good health of the person on whose life insurance is applied for. * * * The provisions of section 834 of the Code of Civil Procedure of the State of New York, and of similar provisions in the laws of other states, are hereby waived; and it is expressly consented and stipulated that, in any suit on the policy herein applied for, any physician who has attended, or may hereinafter attend, the insured, may disclose any information acquired by him in any wise affecting the declarations and warranties herein made."

These statements, together with a statement headed "Medical Examination and Report," were apparently on one sheet of paper, which was indorsed "Application to the Metropolitan Life Insurance Company," followed by the number, kind of policy, on whose life, date, amount, age, premium, approval of home office, and receipt for advance payment, as· "received on this application." The policy is stated to be "in consideration of the answers and statements contained in the printed and written application for this policy upon the life of Charles R. Harris, of Malta, county of Saratoga, state of New York, hereinafter called the 'insured,' all of which answers and statements are hereby made warranties, and are hereby made part of this contract"; and in one of its conditions·it is stated that "the contract between the parties hereto is completely set forth in this policy, and the application therefor taken together."

The argument on the part of the plaintiff is that the term "application," as used in the policy, includes only the first statement in the application put in evidence, and ·does. not include the statements made to the medical examiner, or the statement called the "warranty"; and that, although, as indicated in the warranty, the assured understood and agreed that the statements made to the medical examiner were a part of the contract, falsity in regard to which made the policy void, still the policy excluded them. No such result was, I think, in contemplation of the parties. The warranty uses the expressions, "in this application," "the policy hereby applied for," "the policy herein applied for." Evidently, the warranty

was understood to be the application, or a part of it, upon which the company was called upon to act, and the statements to the medical examiner were made a part of the contract there presented. The whole was indorsed and approved by the company, as the application to it. Such application, consisting of several parts, must, I think, be deemed to be the application referred to in the policy, and therefore a part of the contract of insurance.

The plaintiff further claims that error was committed in receiving the evidence of Dr. Sweetman, who was the attending physician of the assured in January, 1893, and who testified that the assured then had bronchitis. The plaintiff objected to the evidence, on the ground that, under section 834 of the Code of Civil Procedure, the evidence was not permissible, and that the defendant could not obtain the benefit of the provisions of section 836, as the privilege was not waived on the trial by the personal representatives of the deceased assured. The defendant claimed, and the court held, that the waiver of the assured in the application above set out bound the plaintiff, and authorized the giving of the testimony. Under section 836, as it stood prior to September, 1891, the provisions of section 834, as well as of sections 833 and 835, applied to "every examination of a person as a witness, unless the provisions thereof are expressly waived by the person confessing, the patient or the client." By an amendment in 1891, section 836 was made to read that the prior sections were in a similar way applicable, "unless the provisions thereof are expressly waived upon the trial or examination by the person confessing, the patient or the client." Under the Code as it stood prior to September, 1891, there is no doubt the waiver in question would be available. The question is whether, as applicable to this case, a different rule must be held under the amendment of 1891. Is it necessary that the party making the waiver must be present at the trial?

The precise question here involved was considered in Dougherty v. Insurance Co., 87 Hun, 15, 33 N. Y. Supp. 873, by the general term in the second department, and it was held that the waiver was available to the defendant, notwithstanding the amendment of 1891. It is there said:

"If the patient be alive, an entry upon the record at his trial by his counsel would be sufficient. In case of his inability to attend the trial, a written stipulation signed by him, and entered upon the record, would remove the prohibition. That being so, it must certainly be immaterial when the stipulation is signed. In this case it was signed long before the trial, in anticipation of that event, and with the design of having it used thereat. It cannot be assumed that the insertion of the stipulation in the application was an idle ceremony. It was important to the company, and entirely within the competence of the assured. The reasonable construction of the statute, therefore, is that the provisions are expressly waived upon the trial if a proper stipulation to that effect be produced thereat, and entered upon the record, regardless of the time when the waiver was executed."

The privilege is that of the patient (Johnson v. Johnson, 14 Wend. 641; Hunt v. Blackburn, 128 U. S. 470, 9 Sup. Ct. 125); and it is not claimed that a waiver is against public policy. "A statutory or constitutional provision for the benefit of a party may

be waived by him, and, having once waived it, he is estopped from thereafter claiming the benefit." In re Cooper, 93 N. Y. 507.

The waiver is one of the provisions of the contract, inserted for the benefit of the defendant, and in reliance upon which the defendant presumptively entered into the contract. The plaintiff, seeking the benefits of the contract, must accept the burdens. She cannot repudiate any of its provisions which entered into the consideration to the company. It should, I think, be held that the plaintiff is estopped from claiming any benefit of the provisions of section 834. If so, no error in this regard was committed by the trial court.

No other questions need be considered. At the trial a question was made as to the admissibility of record proof of the death and cause of death of James H. Harris, but no point is made here on the subject. The ground is, I think, apparent for the reversal of the judgment, and it should be affirmed.

Judgment affirmed, with costs. All concur.