Wilson, J.
On February 15, 1895, the Northwestern Masonic Aid Association, to whose rights the defendant corporation succeeded and whose obligations it assumed, issued a policy of insurance upon the life of Mrs. Pauline Tietze, then wife of the plaintiff, who was the beneficiary in the policy. On February 15, 1896, the assured failing to make a payment then due, the policy lapsed, but in a few days thereafter the assured was reinstated in the company, upon compliance with its by-laws. On the 15th day of August, 1896, the assured again failed to make the payment due on that date, but on the 18 th day of August, following, was again reinstated. On May 12, 1897, Mrs. Tietze, then being in good standing with the company, died. The defendant refusing to pay the amount specified in the policy, this suit was brought to enforce payment. The defense was that the insured had, in her original application for insurance, and in her several applications for reinstatement, made false statements as to her health of such character as to annul and void the policy. The proximate cause of death seems to have been pneumonia, but the defendant claims that at the time of the original application for insurance, and at each of the subsequent times when the assured applied for and received reinstatement, and particularly so between the dates of her first and second reinstatements, she was afflicted with consumption, the fact of which was well known to her and to the plaintiff at the time when she made such applications. Another ground relied upon to defeat the policy was that many times prior to the date of the original application, and particularly during the year 1894, immediately preceding it, the assured had been confined to her house from sickness, and for which she had at various times called and consulted physicians, all of which, it is claimed, she had denied in her application. What is claimed to have been the original application was printed and written upon three pages of one sheet of four pages. At the head of the *208 first page was printed: “Woman’s application for membership.” Following this was the formal application, stating the amount of insurance and the plan. Following this was printed in large type, “Form A.” Immediately succeeding this, and underneath it, were numerous printed questions, which were filled out and answered, and the whole signed by the applicant. At the head of the second page was printed: “To the medical examiner.” Under this were printed two lines of instructions to the medical examiner, and then followed, printed in large type :
“ FORM B.
“ Questions to be answered by the applicant. The answer to be written by the medical examiner or applicant, in all cases.”
Then followed a large number of questions as to the assured’s ancestry; what diseases, if any, they had suffered or died from, and also what diseases, if any, the applicant had ever had. Following this, on the third page, was printed in large type what was entitled: “ Agreement.” That portion of this agreement which bears upon, or is material to the determination of this case, and also printed under the above caption, is as follows:
“ I, the undersigned, hereby agree that each and all of the foregoing statements and answers in forms A and B, whether written by me or not, are full and 'complete answers to the questions propounded, and are material and are warranted to be true, and that the foregoing application and this agreement are hereby made part of any policy that may be issued pursuant thereto.”
This agreement was signed by the applicant. Then followed a certificate by the medical examiner to the effect that the applicant had answered all questions, explained all diseases and signed the agreement, and also that the general appearance of the applicant at that time was healthy, and giving some facts as to the pulse rate, respiration, measurement of chest, etc. The application was dated January 23, 1895.
*209 We agree with counsel for the defendant that forms A and B constitute the application, and that the answers and statements made in each are part of it. Form B contained questions and answers which were, it is obvious, most material to the risk, and which the company must consider before it would undertake to issue a policy. It seems, also, beyond dispute that such was the understanding and intent of the parties. In the agreement printed on the third page, and which the assured signed, all which preceded it, — being the statements and answers in both forms A and B, — she specifically referred to as “the foregoing application.” It made no distinction between the two.
The material and decisive questions raised and discussed by counsel are : whether the agreement signed by the applicant was a part of the policy which was the contract of insurance ; whether the statements contained in the application were warranties or representations ; and, in either case, what was their effect ? These questions are so closely allied that they may be considered at one and the same time, without a separate discussion of each. That the so-called agreement was not, and was not intended to be, nor considered as a part of the application is clearly evidenced by a mere inspection of it. In the first sentence of it which we have quoted, it refers to the application and the agreement as separate and distinct instruments, the language being: “ The foregoing application and this agreement are hereby made part of any policy,” etc. Under no rule of legal or grammatical construction of which we are aware could it be said that under this statement the two were intended to be considered only as one, or that the agreement should be embraced in and become a part of the application. The only language in the policy which has any bearing upon the questions under consideration is as follows:
“In consideration of the application for membership in this association, which is made a part of this contract, and of the advance payment of twenty-three and 24/100 dollars on the delivery hereof, and like advance payments to be made *210 on or before,” etc. Here it will be seen that in this, which is the contract, and only contract, of insurance, there is no reference whatever to the agreement. This, therefore, was not, and did not, become a part of the policy.
With reference to what are warranties and what are representations in an application for a policy of life insurance, and what is the force and effect of each, it will be found upon an inspection of the authorities that the courts of various states, under the hypnotism of learned counsel, have indulged in many hair-splitting distinctions, many of which do not, in our opinion, bear the test of sound reasoning or good common sense. There are, however, certain fundamental principles upon which the authorities are practically agreed; one is, that warranties are not to be created or extended by construction, — they must arise, if at all, from the fair interpretation and clear intendment of the words used by the parties. They are not favored, and if there be any doubt as to the character of the statement, it should be held to have only the force of a representation according to the general rule. Campbell v. Insurance Co., 98 Mass. 391; May on Ins. §§ 159— 164, citing a large' number of authorities. It is also an inflexible rule that a policy of insurance must be liberally construed in favor of the insured so as not to defeat, without a clear necessity, the claim to indemnity which in making the insurance it was his object to secure. May on Ins. § 175.
Another fundamental rule, universally upheld, is that the policy of insurance, and it alone, is the final agreement or contract of the parties, and a warranty, if there be any, must be evidenced by that. Campbell v. Ins. Co., supra; Price v. Ins. Co., 17 Minn. 499; Ins. Co. v. Day, 39 N. J. L. 94.
Under the broad, general rule, a representation in an application for insurance is no part of the contract, although it is the basis of it, — the foundation on the faith of which it is entered into. It is merely a portion of the preliminary proceedings proposing the contract, operating if material as an inducement to its execution. If false in .any respect ma *211 terial to the risk, the policy will be vitiated, and become void. A warranty, under the general rule where it is sought to be defined, enters into and forms a' part of the contract itself. It specifies, particularly, the precise limits of the obligations which the insurers undertake to assume. In order to charge the insurer in such case, there must be an exact and literal conformance with the terms under which the risk was assumed, not only in material but in "immaterial particulars. This rule, however, is said to be not universally true, but is subject to many qualifications which the courts are constantly extending, and the marked tendency of the later and more modern decisions is to modify the harshness of the old rule in many particulars. May on Ins. § 161; Ins. Co. v. Rogers, 119 Ill. 482; Cushman v. Ins. Co., 70 N. Y. 77.
In the casé last cited, although the statements in the application were held to be warranties, the New York court of appeals said:
“ In construing a policy of life insurance, it must be generally true that before any temporary ailment can be called a disease, it must be such as to indicate a vice in the constitution, or be so serious as to have some bearing upon general health and the continuance of life, or such as according to common understanding would be called a disease ; and such has been the opinion of text writers and judges,” — citing a large number of authorities.
It is sometimes even held that the statements in the application are representations merely, notwithstanding that they were expressly declared to be warranties. Ins. Co. v. Rogers, supra.
To summarize, the so-called agreement signed by the assured in the case at bar was expressly recognized by its own terms as a separate and distinct instrument from the application. The policy, which was the final contract, and in which, under a familiar rule of law, were expressed and merged the terms and conditions of the contract theretofore considered, and all preceding negotiations and agreements did not recognize this agreement as any part of it. It did recognize *212 the application, and expressly provide that it should be a part of the contract, but it did not provide that the statements in the application should have the 'force and effect of warranties, nor did' the application, in any place, make such provision. Neither did it specify that the truth of the statements in the application was the basis of the contract, nor that upon this depended the validity of the contract of insurance. Nor was there any such provision or condition in the application itself. It must, therefore, be held that the statements made by the assured in her application for insurance were representations only, and that their falsity could not avoid or defeat the policy, except as to something material to the risk.
The authorities to which we have been cited by defendant, and upon which it chiefly relies to support its contention that the statements in Mrs. Tietze’s application were warranties, are not in conflict with the views which we have expressed.
In Travelers’ Insurance Co. v. Lampkin, 5 Colo. App. 180, it appears that the policy expressly recited that it was issued in consideration of warranties in the application for it. The court held that this language was sufficient to make the warranties in the application a portion of the policy. The decision, therefore, was based upon the fact that there were warranties in the application.
In Holden v. Insurance Co., 42 N. Y. Supp. 312, there was, following the statements made to the medical examiner, an instrument signed by the assured, as was the agreement in this case, but in that it was expressly called a warranty, and from the language used in it, there was an evident intent to make it a part of the application. Instead of referring to the application as “ the foregoing application,” it refers to it in several instances as “ this application ;” and also refers to the policy to be issued thereon as the “ policy herein applied for.” In addition to this, the policy itself stated that it was issued “in consideration of the answers and statements contained in the printed and written application therefor * * * *213 all of which answers and statements are hereby made warranties and are hereby made part of this contract.” In another portion of the policy, it was also stated, “ the contract between the parties hereto is completely set forth in this policy and the application therefor taken together.” It was upon this language that the New York court based its decision, holding that there was a clearly expressed intent in the warranty agreement to make it a part of the application, and that it was so expressly recognized in the policy. This presents a case wholly different and easily distinguishable from the one at bar.
In Thomas v. Insurance Co., 108 Ill. 92, the application by the insured had the following caption: “ The applicant will answer particularly the following questions and sign the same, as descriptive of the premises and forming a part of the contract of insurance and a warranty on his part.” In this case, the policy, even conceding that by its terms it made the application a part of it, did not provide that the statements in sueh application should be warranties, nor was there anything in the application providing that its statements should be warranties, nor even that the validity of the policy should depend upon the truth of the statements.
It having been held that forms A and B together constituted the application upon the basis of which the policy issued, and which entered into and formed a part of the contract of insurance, it was admissible in evidence as the application, and as such the defendant was entitled to have it go to the jury. The offer of the defendant in this respect, however, was denied by the court, and for this error we feel compelled to reverse the judgment, and remand the cause for a new trial. Counsel for plaintiff claim that it appears from the record-the court simply refused to permit form B to be introduced in evidence as apart of the application, and did not refuse to admit it as a paper separate and distinct from the application. Even if this contention were correct, it would avail nothing, for the reason that the defendant was entitled to have it admitted in evidence and go to the jury as a part of the application. *214 It can be readily seen how defendant might have been materially prejudiced by the refusal to admitin evidence as the application upon which the contract of insurance was founded, the most material portion of it,- — that which contained the questions propounded by the medical examiner to the applicant, and her answers thereto. The legal attitude and legal rights of the parties would be very different in case this form B was a part of the application, and hence a part of the contract of insurance, than they would be if form B was no part of the application.
It is also suggested by plaintiff’s counsel that form B was at one time offered in evidence as plaintiff’s Exhibit A, and was received without question or objection, and was before the jury. Upon a mere cursory examination, it would appear that there was some foundation for this claim of plaintiff, but upon a thorough reexamination of the record, we are satisfied that it is incorrect. It appears from the abstract that plaintiff offered in evidence as his Exhibit A, the policy of insurance upon which the suit was brought, and that attached to this were forms A and B, and the agreement to which we have referred elsewhere in this opinion. It does not appear that they were read to the jury, nor that the court made any ruling as to the effect of any part or portion of the entire exhibit. Subsequently, it appears that the plaintiff offered in evidence what he termed the formal application, but this was only the first page of the document, and expressly excluded the second and third pages, upon which form B was printed and written. Defendant objected to the introduction of only a part of the exhibit, but its objection was overruled, and the offer was admitted. Again, the abstract shows that the defendant in presenting its case offered the entire exhibit, embracing both forms A and B, as being the original application. The plaintiff objected to all that part of the document contained on the second and third pages thereof, being the whole of form B, being received in evidence as any part of the application referred to in the policy of insurance. This objection was sustained, and we do *215 not find that any further attempt was made, and indeed, none was necessary after this ruling, to offer form B as evidence. If it could not be received in evidence as a part of the application, it could not avail defendant anything in its defense.
For this error, the judgment must be reversed, and the cause remanded for a new trial.
We are aware that out of the vast multitude of decisions which have been rendered by the courts upon insurance law, some authorities may be found which seem to be in conflict with the views which we have expressed. In later years, the business of life insurance has become of vast extent, new legal questions have arisen, and are constantly arising, which must be met, and courts are required, in furtherance of justice, frequently to modify old rules which are not applicable strictly to the new state of affairs, new complications and forms of the business. It is also true that it is frequently the case an apparent conflict in authority is due to differing statutory provisions in different states. We feel confident, however, that our views are in accord with the trend of the modern and best considered authorities, and that they are in accord with reason and justice, we have no doubt.

Reversed.