Thomson, P. J.
This action was brought to recover the amount of a policy issued by The Bankers’ Life Insurance Company on the life of Elias EL Webb, deceased. The plaintiffs were the children of Webb, and were the beneficiaries named in the policy. The defense was that in his application for the policy he had made a number of untrue statements, among which was one that he had never been declined or postponed by any life insurance company or association; and. that as part of the application he had warranted all his statements to be true, and offered them to the company as a consideration for the contract. The plaintiffs did not question the making of the statement, but denied that it was untrue.
The application for the policy was made on the 16th day of April, 1897. Tn the application Mr: Webb stated, among other things, that he had never *458 been declined or postponed by any life insurance company or association. He concluded tbe application with the following agreement: “I also agree that all of the foregoing statements and answers, as well as those that I mate to the company’s medical examiner in continuation of this application, are by me warranted to be true, and are offered to the company as a consideration for the contract,. which I hereby agree, to accept as issued by the company iq. conformity with this application.” The only signature of the applicant to the application, follows this agreement. The following is all of the policy which requires notice: “Bankers’ Life Insurance Company of the City of New York, in consideration of the application for this policy, and all statements made therein and to the medical examiner, and of the stipulations and agreements on the back of this policy, all of which are made part of this contract * * * promises to pay to Mary Webb, wife of the insured, her executors, administrators or assigns, the sum of ten thousand dollars * * Mrs. Webb having died, upon the request of the insured, the policy was made payable to the plaintiffs-.
• It is clear that the agreement of warranty was part of the application. It speaks of the application as “this application,” and the signature to the application follows the agreement. Also, by the terms of the policy, the application and the statements it contained were made part of the contract. The agreement of warranty included in the application, was thus incorporated with the policy. — Holden v. Insurance Co., 42 N. Y. Supp. 310.
The agreement of warranty being therefore a constituent part of the contract, if the statement, the truth of which was warranted, was untrue, there can be no recovery on the policy. — May on Insurance, § 156; Clemans v. Supreme Assembly, 131 N. Y. 485; *459 Thomas v. Fame Ins. Co., 108 Ill. 91; Insurance Co. v. Lampkin, 5 Colo. App. 177.
Counsel for -the plaintiffs, however, argues that upon the facts disclosed by the evidence the statement was not untrue. He maintains its truth, not as-an independent fact, but as a deduction from facts. It will therefore be necessary to examine the facts from which counsel’s conclusion is drawn.
On the 23d day of January, 1897, Mr. Webb made a proposal to the agent in Denver of the Mutual Reserve Fund Life Association of New York, for a policy in that association. He signed a paper entitled “Part 1 of Application for Membership and Policy of Insurance,” which contained certain questions propounded to him by the agent and his answers thereto. This paper was thereupon delivered to the agent, who immediately forwarded it to the home office, where it was received on the 28th day of January, 1897. Having signed and delivered this paper, he subscribed another paper before Dr. McLauthlin, the medical examiner at Denver of the association, entitled, “Part II of Application and Policy of Insurance,” in which he answered all the questions propounded to him by the examiner. There was still another paper, entitled, “Part III of -Application for Membership and Policy of Insurance.” This was to be signed by the medical examiner only, and was to constitute his report to the company. It contained questions to be answered by him showing what his examination of the applicant disclosed, and called for his professional opinion of the applicant’s physical condition, and the desirability of the risk. With this paper the applicant had nothing to do. One of -those questions was, “Was urine voided in your presence?” to which the examiner answered, “Sample could not be obtained.” On the 13th day of February, 1897, Dr. McLauthlin wrote to Dr. Bow- *460 den, the medical director of the company in New York, as follows:
‘ ‘ Dear Doctor Bowden: On January 23 I examined Elias H. Webb, Denver, county sheriff ($10,000.00). At that time he could not furnish the sample of urine. Otherwise examination complete, with his signature. He then changed his mind and would not furnish urine, although agent is still hopeful. Since that time he has been, by report, quite ill, the disease being unknown to me. Shall I insist on complete re-examination if he still desires insurance ? Please advise. Also, shall I forward examination minus urine exam, if he refuses to consider the matter further?”
To the foregoing letter the following answer was returned by the assistant secretary of the company:
“Medical Department, Mutual Resérve Fund Life Association, Broadway, New York. Frederick A. Burnham, President, James W. Bowden, M. D., Medical Director, February 17,1897. ° '
“Dr. H. W. McLauthlin, Mack Blk., Denver, Colo.
“Dear Sir: Your esteemed favor of Feby. 13th at hand, and contents fully noted. Should Mr. Elias H. Webb reconsider his decision and wish to take out insurance, and if his reported illness be a fact, we would certainly insist upon a complete re-examination. In any event, will you kindly forward the record of the examination you have already made of this party, without the urinary examination, in case he refuses to take any further steps in the matter? Your kind attention will be highly appreciated. Yours very truly, Robert H. Jones, Assistant Secietary. ’ ’
. Dr. McLauthlin thereupon forwarded the papers (Parts II and III) to the home office, having appended to Part III the following statement: “Mutual Reserve Fund Life Association. Confidential *461 communication February 24, 1897. Mr. Webb declines to complete the examination by furnishing-sample of urine. He claims to have been misinformed of certain facts concerning company’s policy by the agent writing him. He has been sick since my examination, confined to house, but the disease is unknown to me. At the time of examination he seemed a first-class risk, although I failed to understand his long confinement in hospital in 1864 for hernia. I cannot recommend him without examination of urine; also on account of his recent illness.
“H. W. M.”
.The last named papers were received by the company March 1, 1897. On March 3, 1897, the application was declined by the company, and notice of the fact ordered sent to the applicant. Whether such notice was in fact sent, or whether any information of this action of the company was ever imparted to Mr. Webb, does not appear. It was shown that, as a witness in a ease brought by these plaintiffs against the Denver Mutual Life Insurance Company, in the circuit court of the United States for the district of Colorado, upon a policy issued by that company insuring the life of Mr. Webb, Dr. Bowden had testified that the three papers, known as parts I, II and III, constituted the application!
From the titles at the head of the three papers, by which each was designated as a part of the application, and from the foregoing statement of Dr. Bowden, it is argued that, because Part III was left unfinished, the application was never completed; or that, if such conclusion be -unwarranted, Mr. Webb’s refusal to permit the medical examiner to proceed with his examination, operated to revoke the application; so that, in either ease, at the time the company assumed to decline the application, there was *462 no application before it to be passed upon, and tbe action it took was, therefore, a nullity.
One of the commonly accepted meanings of the term “application” is a request, or a document, containing a request. Bouvier defines it, generally, as the act of making a request for something; and, specially, with reference to insurance, as the preliminary statement made by a party applying for insurance. An application for. insurance, therefore, comes from the party desiring the insurance. The report of the examiner is not the act of such party. There is no definition of the word which would give to a document prepared and signed by the examiner alone, which contains simply his conclusions as to the nature or desirability of the risk, together with the facts on which the conclusion is based, the contents of which it is not necessary that the applicant should know, and which may directly condemn the risk, the character of an application for insurance. We can hardly suppose that the association in its headings to the different documents, intended to revolutionize the established meaning of an English word. We must regard those headings merely as forms devised by the association for its own convenience in differentiating the several papers, and the statement of Dr. Bowden as having reference only to those forms. The examination was required to enable the association to judge from evidence outside of the statements of the applicant whether the application should be approved. The requirement that he submit to an examination supposed an application already made. The purpose of the examination was to furnish the association with the means of passing intelligently upon the application; and without the application, the association had no right to make the investigation; so that the examination necessarily followed the application.
*463 We think the application was complete before the examination was undertaken; and that, therefore., the refusal of Mr. Webb to permit the examiner to conclude the examination, had, and could have, no effect upon the application. That was still pending, and its revocation or withdrawal required some action on the part of Mr. Webb directed specifically to it. No such action was taken, and he left the application to be passed upon by the association. The effect of the action which he did take, was to deprive the company of the benefit of certain evidence which it desired; but the application itself was left undisturbed.
These plaintiffs brought an action in the circuit court of the United States for the.district of Colorado, against the Security Mutual Life Insurance Company, upon a policy issued by that company insuring the life of Mr. Webb for the benefit of the plaintiffs. The defense interposed by the company in that case was the same with the one we have been considering. Substantially the same statement by the insured was made there as here. Its untruthfulness was averred, and the evidence in support of the averment consisted of the identical proceedings had upon the application of Mr. Webb to the Mutual Reserve Fund Association, which are now before us. The plaintiffs had judgment below, and the company appealed to the United States circuit court of appeals for the eighth circuit, where the judgment was reversed. The court held that the report of the medical examiner was not part of the application; that the application was complete without it; and that the refusal of Mr. Webb to permit the examination to proceed to a conclusion, did not revoke the application. — Security Mut. Life Ins. Co. v. Webb, 45 U. S. Cir. Ct. of App. 648. See also Edington v. Life Ins. Co., 77 N. Y. 564.
*464 The application not having been withdrawn, and the association having in the regular course of its business rejected it, the statement by Mr. Webb that he had never been declined or postponed by any life insurance company or association was untrue; and being untrue, it avoided the policy.
It may be that the statement was made in good faith. We think it probable that Mr. Webb supposed that his action in respect to the examination operated to discontinue the application;'but he warranted the statement to be true, and nothing short of its literal truth would satisfy the warranty. No question of good faith is involved.
The judgment must be affirmed.

__Affirmed.