[Civ. No. 436. Fifth Dist. July 28, 1965.]

MARJORIE E. CRUMP, Plaintiff and Respondent, v. NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, Defendant and Appellant.

Gibson, Dunn & Crutcher, G. Edward Fitzgerald and Dean Stern for Defendant and Appellant.

Donahue & Hastin, Kenneth N. Hastin and Roger C. Donahue for Plaintiff and Respondent.

CONLEY, P. J.—The plaintiff, Marjorie E. Crump, widow of Dr. Spencer M. Crump, secured a judgment of $10,000, besides interest and costs, on a policy of insurance obtained on behalf of Dr. Crump as a practicing dentist and a member of the Southern California State Dental Association and written by Northwestern National Life Insurance Company (hereinafter referred to as Northwestern). The defendant appeals on the sole ground that Dr. Crump did not personally sign the application for the insurance, and that, therefore, at the time it was executed and forwarded by his wife, he personally did not have knowledge thereof; appellant argues that there was never a meeting of the minds as between the insurer and the insured, and that the purported policy was void *ab initio*. The respondent contends on appeal, as she did successfully in the lower court, that in signing the doctor's name to the application she acted as his authorized agent, and that the decedent afterwards ratified her acts in procuring the contract of insurance; she points out further that, in the circumstances of the case, the company did not suffer prejudice and that it admitted at the trial that the policy was not void.

On this appeal, the court owes a duty to indulge in all intendments in support of the determination of the lower court, as the judgment is presumed to be correct. (*Walling* v. *Kimball*, 17 Cal.2d 364 [110 P.2d 58].) This court must consider the evidence in the light most favorable to the prevailing party, giving her the benefit of every reasonable inference and resolving all conflicts in her favor. (*Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140 [134 P. 1157].)

Neither are we unmindful of the principle set forth in *Page* v. *Washington Mut. Life Assn.*, 20 Cal.2d 234, 239 [125 P.2d 20]: "Forfeitures, particularly in insurance contracts, are not favored. (*Bittinger* v. *New York Life Ins. Co.*, 17 Cal.2d 834 [112 P.2d 621].) And if reasonably possible in light of the circumstances, the courts will determine that a forfeiture has not occurred or that a waiver or estoppel exists. (*Knarston* v. *Manhattan Life Ins. Co.*, 124 Cal. 74 [56

P. 773] ; *Huber* v. *New York Life Ins. Co.,* 18 Cal.App.2d 269 [63 P.2d 318].) ''

The record shows that Dr. Crump was engaged in the practice of dentistry in Bakersfield; in the year 1956, he suffered an accidental injury as a result of which his health gradually deteriorated. He, however, continued in the active practice of his profession and was so engaged at the time of the execution of the application for, and the issuance of, the policy in question; he was also a member in good standing of the Southern California State Dental Association.

The plaintiff, Marjorie E. Crump, was the wife of the decedent by a second marriage. Professionally, she was a nurse and an anesthetist, and, as shown by uncontradicted evidence, she was in charge of all of the business elements of the dental office, being in constant attendance and having supervision of all matters that had a business complexion. The doctor also executed and delivered to her several years before a general power of attorney, as proven by testimony of herself and the lawyer who prepared the instrument.

The doctor's office received through the mail, late in the year 1959, an application blank soliciting him to apply for a franchise type of life insurance policy available to members of the Southern California State Dental Association, pursuant to arrangements made by Northwestern. The only required qualifications for the issuance of the policy, aside from the payment of premiums, were that the insured should be a member of the association and in the active practice of dentistry. It was explicitly stated that no evidence of insurability was required.

The plaintiff testified that she was surprised that this type of policy was available, and immediately concluded that it furnished an excellent opportunity for the doctor to secure some additional insurance, in view of the fact that his health had deteriorated to the point where it was not likely that he could secure a favorable medical examination if one were required. In his temporary absence, she discussed the matter with other employees in the office and contacted Dr. Vogt, another Bakersfield dentist, who assured her that he thought the opportunity of securing the policy was open to Dr. Crump, but that she should verify this opinion by consultation with the brokerage firm in Los Angeles which handled the insurance for the dentists of the Southern California association. She then talked with a Mr. Jennings of that firm,

and he assured her that the policy was available. Mrs. Crump then borrowed sufficient money from Dr. Vogt to pay the first premium, and she filled in the application blank with the full name of Dr. Crump, his mailing address, the date of his birth, the city of his birth, and the name of herself as beneficiary and "owner," as well as the date and place of signing. The application was dated the 1st day of January 1960, and the policy of insurance was thereafter duly issued as of January 1, 1960, and forwarded to Dr. Crump at his office where it was received by the plaintiff in her capacity of his agent in charge of business matters.

At or about that time, she advised Dr. Crump of the existence of the policy, and the record shows, both by her evidence and that of Dr. Vogt, that Dr. Crump expressed himself as satisfied with the entire proceeding, and approved the application for the policy and its issuance.

When Mrs. Crump filed her proof of loss after Dr. Crump's death, the company noted that her signature appeared to be very much like the purported signature of the doctor on the application. One of their representatives then asked her if she had signed the application, and she readily answered, "Yes." The company denied liability on that ground.

On February 13, 1962, plaintiff commenced this action which in form was a suit for declaratory relief. The case was tried on January 16, 1964, and judgment was ordered in favor of the plaintiff. The trial court concluded that on the date of death of Spencer M. Crump ". . . a valid and binding contract of insurance existed between defendant. Northwestern National Life Insurance Company, as insurer, and Spencer M. Crump, as the insured, insuring the life of Spencer M. Crump in the sum of $10,000.00, said policy designating Marjorie E. Crump as beneficiary," and that the plaintiff was entitled to judgment against the defendant for the principal amount named in the policy, together with interest and costs.

In its findings, the trial court held that while Mrs. Crump signed the application for the insurance, she had the "authority so to do" and that after the issuance of the policy the decedent, Dr. Crump, ratified the actions of his wife, although he did not notify the insurance company of the ratification.

The appeal really involves only a single issue. The trial court asked Mr. David J. Timmerman, one of the home office

attorneys for Northwestern: "Had Dr. Crump actually signed this application, himself, would there have been any contest?"

He answered: "Had he signed it himself . . . no, there would be no contest."

Defendant's counsel, on cross-examination, further testified as follows:

"Q. Mr. Timmerman, in checking out this policy you did find, did you not, that Dr. Crump was a member in good standing of the dental society? A. Yes, correct.

"Q. You did find, did you not, that at that time Dr. Crump was regularly and actively in his practice in dentistry. A. At what time?

"Q. At the time this application was made. A. That would be January of 60?

"Q. Yes. A. Yes, that is correct.

"Q. So, but for the signature, itself, there was nothing in this application that would cause you to raise any defense against it, isn't that correct? A. But for the signature and imputed knowledge of Dr. Crump, no, there would be nothing else."

The plaintiff argues that the following reasons support the judgment: (1) That plaintiff acted as agent for Dr. Crump;

(2) That Dr. Crump ratified her acts; and

(3) That the defendant admitted the validity of the insurance policy in the significant respect hereinafter mentioned.

■ The uncontradicted evidence as to the established course of conduct of the Crump dental office leads inevitably to the conclusion that Mrs. Crump was the active agent of the doctor in connection with practically all of his business affairs. Mrs. Crump was not only the wife, but the nurse and office assistant of Dr. Crump, and she took care of the family business almost entirely; because of the poor health of Dr. Crump, her duties increased after his injury in July of 1956, until in the year 1958, she was in full charge of the business of the office. The records in evidence show that she took care of the payment of Dr. Crump's fees to the Board of Dental Examiners and to the Department of Professional and Vocational Standards, and that she wrote all of the checks on the three accounts maintained by the Crumps. It also appears that she kept the books and did the billing, and that in her business transactions she sometimes signed his name only, and sometimes signed his name "by Marjorie E. Crump."

She also held a general power of attorney executed by her husband. Dr. Crump's delicate health required that he confine his activities more and more to the actual practice of his profession, and that his wife should handle all business transactions and decisions.

█ It is, of course, generally known that in connection with the transaction of the insurance business much of it is done through the instrumentality of agents, not only for the insurer but on behalf of the insured. (See 16 Appleman, Insurance Law and Practice, Part 59.)

The insurance policy was one of a large number issued to individuals who were members of the Southern California State Dental Association; the underwriters of Northwestern must have calculated the rate base for these policies on a plan that completely eliminated the usual contents of applications for life insurance policies relating to the past and present health of an insured. As already noted, there was included in the application a specific statement, "No Evidence of Insurability Required." Hence, it is obvious that, while in the normal application for a policy of life insurance there are numerous questions regarding the health of the proposed insured that must be answered accurately, and which, therefore, require the personal attention of the applicant, no such situation existed in the present case. The form of the application was such that it could easily be completed by the agent of Dr. Crump.

█ It is not always essential in order to create a binding contract of insurance that a proposed insured shall himself personally sign the application for the policy. In *Meyer* v. *Johnson,* 7 Cal.App.2d 604, 611-612 [46 P.2d 822], it is said: "It is well established that the signature of an insured to an application is not necessary to predicate the issuance of a valid insurance policy, and this is so even though the policy inferentially requires the signature of the insured to the application, which the policies in question do not. (*Bloom* v. *Pacific Mut. Life Ins. Co.,* 85 Cal.App. 419 [259 P. 496]; *Kahn* v. *Royal Indemnity Co.,* 39 Cal.App. 180 [178 P. 331].) In the latter case, the court says, at page 183: 'It is admitted by the respondent that the circumstances under which the application was received are somewhat vague and uncertain, but it is true, as claimed, that it was never signed by the deceased. The policy further provides, however, that "This policy with a copy of the application therefor *signed*

*by the insured,* and such other papers as may be attached to or endorsed hereon, shall constitute the entire contract between the company and the insured. . . ." As urged by the appellant, the policy gives no support, therefore, to the contention of counsel for respondent, for whether the application was signed by the insured or not, it is a paper attached to the policy, and therefore constitutes a part of the contract between the company and the insured, under the provisions of which the insured agreed to accept the policy subject to all the terms and conditions contained in the application. *And the fact that it was not signed is immaterial.'* (Italics ours.)'' (See 12 Appleman, Insurance Law and Practice, § 7123, p. 165, § 7306, p. 430.)

It is also clear that there is conclusive evidence showing ratification of the insurance contract by Dr. Crump. The case just above cited approves ratification as a principle applicable to policies of life insurance. (See also *Kahn* v. *Royal Indemnity Co.,* 39 Cal.App. 180 [178 P. 331] ; *Byrne* v. *Prudential Ins. Co. of America* (Mo.) 88 S.W.2d 344.)

The application in the instant case contains the following provision : ''The insurance applied for hereunder shall not take effect unless (a) the Applicant is eligible for insurance without evidence of insurability under the Plan, (b) this application is completed in full and signed by the Applicant, and (c) the Applicant has deposited the full applicable initial premium with the Company or an authorized agent of the Company or an authorized solicitor of the agent.'' While it is conceded that Dr. Crump was eligible for insurance, and that the full premiums on the policy were paid, the question remains whether the fact that he personally did not complete the application and sign it, but that these acts were done by his agent, complies with provision (b) of the application.

Mr. David J. Timmerman, expert of the insurance company, answered a question of the court to the effect that if a two-year noncontestability provision had been effective, the company would have paid the full face amount of the policy.

''THE COURT: . . . Lets assume Dr. Crump had been fortunate enough to live past the two-year anniversary point so that you could not contest the validity of the policy under the terms thereof. . . . Would you still be taking the position that it was a void policy because it did not in fact have the signature ?'' Mr. Timmerman answered : ''In this case we would have paid. . . .'' And he later reiterated : ''If the

contestable period had run we would have paid the money.'' This answer constituted a statement by its legal representative, that the company believed that the policy was not void. Incontestability does not apply to a policy which is void *ab initio.* ▮ The invocation of an incontestability provision presupposes a basically valid contract. (*Obartuch* v. *Security Mut. Life Ins. Co.,* 114 F.2d 873, 878 (Certiorari denied, 312 U.S. 696 [61 S.Ct. 730, 85 L.Ed. 1131], rehearing denied, 312 U.S. 716 [61 S.Ct. 824, 85 L.Ed. 1146]; *Ludwinska* v. *John Hancock Mut. Life Ins. Co.,* 317 Pa. 577 [178 A.28, 98 A.L.R. 705]; *Fisher* v. *United States Life Ins. Co. in City of New York,* 145 F.Supp. 646, affirmed in 249 F.2d 879; *Pond* v. *Idaho Mut. Benefit Assn.,* 81 Idaho 38 [336 P.2d 314, 316]; *Hall* v. *Missouri Ins. Co.* (Mo.App.) 208 S.W.2d 830; *American National Ins. Co.* v. *Brawner* (Tex. Civ. App.) 93 S.W.2d 450.) ▮ An insurer is bound by its interpretation of its own policy and the admission of the defendant that the insurance contract would be incontestable after two years is an admission that the policy is in fact valid, or, at most, only voidable in the event of a timely action on its part prior to the death of the insured.

▮ It is our considered belief that it was entirely permissible, in the circumstances of this case, for the wife and business agent of the doctor to act for him in preparing the application. Our belief is fortified by the fact that no harm was done to the insurance company by this procedure. Mr. Timmerman stated that the reason for requiring the signature of the person insured ''is identification purpose,'' and that if a subsequent change of beneficiaries had been applied for it would have been highly convenient to the company to have in its files an exact signature of the insured. The witness evidently did not have in mind that under the terms of the application and the policy (Plaintiff's Exhibits No. 2 and 4), the plaintiff was designated as the ''owner,'' and that the owner rather than the insured ''. . . with the written consent of the irrevocably designated primary beneficiaries, if any, and subject to the provisions of the 'Beneficiary' and 'Assignment' sections,'' could ''exercise and enjoy all benefits, rights, options, and privileges granted in or incident to this policy.'' Actually, there was no change of beneficiary and no attempt to change the beneficiary. Furthermore, as the beneficiary was the plaintiff herself there could not possibly have been any difficulty or misunderstanding.

Mr. Timmerman further testified: ". . . If somebody else signed under a Power of Attorney, and we accepted it, if we had accepted it, then when we would come to the day someone could come in and say, "I'm really the fellow that should be insured," then this could be somebody we never heard of." This answer is not very clear, but it apparently presupposes some failure on the part of an insured or his agent to make a sincere and honest application for a policy. Actually, there is no question here but that the agent for Dr. Crump did in fact apply in an entirely sincere manner, and that what was done by Mrs. Crump was later ratified and approved by Dr. Crump. It, therefore, seems to be a wholly insubstantial and purely technical objection which Northwestern now urges.

To eliminate the policy which was procured through the actions of Dr Crump's authorized agent and thereafter ratified by him, would be to elevate the defendant's construction of the "letter" of the application over the evident "spirit" of the transaction, and thus to do a wrong to the decedent and his widow.

The judgment is affirmed.

Brown (R. M.), J., and Stone, J., concurred.

A petition for a rehearing was denied August 25, 1965, and appellant's petition for a hearing by the Supreme Court was denied October 7, 1965.