[Civ. No. 57493. Second Dist., Div. Five. Mar. 11, 1981.]

MIDDLESEX MUTUAL INSURANCE COMPANY,
Plaintiff and Respondent, v.
IGNACIO RAMIREZ, Defendant and Appellant.

COUNSEL

Sayble & Raphael, Hill Sayble, Cotkin, Collins, Kolts & Franscell, Raphael Cotkin and Steven Lincoln Paine for Defendant and Appellant.

Murchison & Cumming, John McCaskey, Horvitz & Greines, Ellis J. Horvitz and Marc J. Poster for Plaintiff and Respondent.

OPINION

STEPHENS, Acting P. J.—On August 7, 1973, Shawn Emory rented a 1972 Chevrolet Impala from Holiday Car Leasing Corporation (hereinafter Holiday Car Leasing). On August 16, 1973, while driving the Impala, Emory struck and injured appellant Ignacio Ramirez. At the time of the accident, Holiday Car Leasing was a named insured on two insurance policies issued by respondent Middlesex Mutual Insurance Company (hereinafter, Middlesex). The action underlying this appeal was one for declaratory relief: Middlesex, the plaintiff in that action, sought a determination of its obligation under the policies with regard to the personal injury action filed by appellant.[1]

Holiday Car Leasing and Holiday Motors, Inc., (hereinafter Holiday Motors) were separate entities located at the same address. Holiday Car Leasing leased automobiles for periods in excess of six months; Holiday Motors operated an automobile sales agency and garage. Holiday Car Leasing did not engage in garage operations. At the time of the accident Middlesex had issued two policies which are pertinent

[1]Both appellant and Middlesex appealed the judgment. Middlesex subsequently abandoned its cross-appeal.

here, one a "Multi-Cover" policy and the other a "Commercial Umbrella" policy. In both policies, the named insureds were Holiday Motors and Holiday Car Leasing. Both policies became effective August 1, 1973.

The "Multi-Cover" policy actually covers a very broad spectrum of risks. It provides comprehensive general liability coverage, insurance for claims for false arrest, malicious prosecution, libel, slander, violation of right of privacy, wrongful entry or eviction, and protection against uninsured motorists. It provides for property insurance, business suspension insurance, and comprehensive glass insurance. It is clear that it is not just an automobile insurance policy. It provided automobile liability limits of $250,000/$500,000 for bodily injury.

Pertinent here is the garage liability coverage which is included in the multicover policy. It provides that a permissive user of a named insured is an insured under this coverage but only to the extent of the limits of the "Financial Responsibility Law." (Veh. Code, § 16056, subd. (a).) The provision for permissive users is stated to apply with respect to the "automobile hazard" as distinguished from "garage operations other than the automobile hazard."[2]

The trial court concluded that the limitation of coverage for the permissive user is valid and that the Middlesex "Multi-Cover" policy is primary and provides $15,000 of insurance for Emory, the permissive user of Holiday Car Leasing.

Insurance Code section 11580.1, subdivision (b)(4), provides that a policy of automobile liability insurance must contain a provision extending insurance to a permissive user to the same extent as that afforded the named insured; subdivision (d)(2) of that section provides that in the case of a policy in which a named insured is engaged "in the business of selling, repairing, servicing, delivering, testing, road testing, parking or storing automobiles," the insurer and the named insured may agree that coverage be limited as to any person other than a named insured to the limits of the Financial Responsibility Law. The permis-

---

[2]"Garage operations" is defined as "the ownership, maintenance or use of the premises for the purposes of a garage and all operations necessary or incidental thereto." "Garage" means "an automobile sales agency, repair shop, service station, storage garage or public parking place." The definition of "automobile hazard" that is applicable here is "the use in connection with garage operations of any automobile which is neither owned nor hired by the named insured, a partner therein, or a member thereof, or a member of the same household as any such person."

sive user limitation in the "Multi-Cover" policy appears as subdivision (3)(b) under "III PERSONS INSURED."[3]

The "Commercial Umbrella" policy contains a permissive user exclusion; Insurance Code section 11580.1, subdivision (a), provides that the requirement of permissive user coverage contained in subdivision (b) of that section shall not apply "if such policy contains an underlying insurance requirement...equal to or greater than the limits specified in... the Vehicle Code." Such a requirement appears in the "Commercial Umbrella" policy.[4]

■ Appellant asserts that the "Multi-Cover" policy covers the permissive user Emory to the same extent as the named insured which appellant argues is $250,000. Respondent maintains that the amount of insurance in force for appellant's claim on the "Multi-Cover" policy, if there is any at all, is $15,000, which is the limit of the Financial Responsibility Law.

Appellant's primary argument asserts that the permissive user limitation in the "Multi-Cover" policy does not apply to Holiday Car Leasing by its terms. The findings of fact and conclusions of law below, together with the language of the "Multi-Cover" policy, support this assertion. The limitation itself purports to apply only "Under the Garage Liability Coverages," and the trial court expressly found that Holiday Car Leasing, the named insured as to which Emory was a permissive user, had no "Garage Operations" as defined in the policy or in Insurance Code section 11580.1, subdivision (d)(2).

■ Middlesex responds that Holiday Car Leasing either engaged in garage operations (contrary to the trial court's ruling) or, in the alter-

---

[3]Holiday Motors is a named insured described in subdivision (d)(2) which is summarized above. Holiday Motors and the insurer agreed to the limitation which subdivision (d)(2) permits.

[4]The underlying insurance requirement appears in an endorsement to the "Commercial Umbrella" policy. It reads in pertinent part: "'It is agreed that, as respects all automobile leasing or renting activities, the insured will maintain or require lessees or rentees to maintain the following minimum underlying insurance in force during the currency of this policy covering the insured's liability arising out of such activities....

"'MINIMUM UNDERLYING INSURANCE.

"'Automobile liability written without special restrictive endorsements on standard forms in general use with limits of at least:

"'Bodily Injury Liability $250,000 each person $500,000 each occurrence.'"

native, was not covered for automobile liability *at all*: "The only insuring agreement in the 'Multi-Cover' policy with regard to automobile liability is that found under the heading 'Garage Liability' and relates only to occurrences 'arising out of garage operations.' There is no other insuring agreement for the 'automobile hazard': that phrase is defined in terms of and made solely part of garage operations liability."

The question thus presented is: does the "Multi-Cover" policy extend *any* coverage to Holiday Car Leasing? If the answer is in the affirmative, then the limitation expressed in the policy, however valid as to Holiday Motors, will not apply to Holiday Car Leasing due to its explicit application to garage operations.[5] If, on the other hand, we find that Holiday Car Leasing is *not* covered under the "Multi-Cover" policy, then the conclusion that Middlesex has received premiums from a named insured under a policy representing no insurable interest (and thus, no risk whatsoever to Middlesex) is inescapable. Such a policy is void under Insurance Code section 280. ·

Appellant asserts that several facts indicate that the parties to the policy intended that it extend coverage to the car rental operations of Holiday Car Leasing. The intent of the parties is primary in this context (*Dart Transportation Service* v. *Mack Trucks, Inc.* (1970) 9 Cal.App.3d 837, 847 [88 Cal.Rptr. 670]); also of importance are the reasonable expectations of the insured (*Otter* v. *General Ins. Co.* (1973) 34 Cal.App.3d 940, 951 [109 Cal.Rptr. 831]).

In this regard, appellant points to an "Employer's Insurance Certificate" filed by Middlesex with the Department of Motor Vehicles, which certified the "existence and effectiveness" of an automobile liability policy covering Holiday Car Leasing, and "applicable to all vehicles *owned, operated,* or *leased* by the holder of said certificate." (Italics added.) In addition, a binder issued by Middlesex which purported to be "[A] temporary insurance contract to serve as evidence of insurance

---

[5]For this reason we need not address whether a permissive user limitation applied to Holiday Car Leasing would be effective within a policy including a garage (Holiday Motors) as a named insured. Although such a result appears to be technically feasible within the wording of Insurance Code section 11580.1, subdivision (d)(2), we cannot believe that the public policy established by subdivision (b)(4) of that section could properly be circumvented by the simple expedient of including a garage as a named insured in a policy; we therefore assume, without so holding, that the permissive user limitation permitted by subdivision (d)(2) would only be effective as to any named insureds engaged in garage operations as contemplated by that subdivision.

...Pending Issuance and Delivery of Policy" indicated "Multi-Cover" coverage for customer rental in the amounts of $250,000/$500,000.

Finally, the Middlesex "Commercial Umbrella" policy, as noted, requires that underlying insurance be maintained by the insured with respect to "all automobile leasing or renting activities." The "Commercial Umbrella" policy provides that it shall apply only to the difference between the limits shown and the underlying limits shown in a schedule of underlying insurance. The schedule of underlying insurance includes the "Multi-Cover" policy which has already been discussed.

The "Commercial Umbrella" policy provides that the insured (Holiday Motors and Holiday Car Leasing) will maintain or require lessees or rentees to maintain certain minimum underlying insurance. In the event that this requirement is not met, the insurance provided by the "Commercial Umbrella" policy shall apply in the same manner that it would have applied had such underlying insurance been in force. The amount of underlying insurance provided in the endorsement is $250,000/$500,000/$100,000. The indorsement provides further that "[t]his policy shall not apply to any liability of any person or organization to whom an automobile has been leased or rented and arising out of the operation, maintenance, use, loading or unloading of such leased or rented automobile." ·

These factors, together with the inclusion in the "Multi-Cover" policy of Holiday Car Leasing as a named insured, reasonably indicated to Holiday Car Leasing that it was covered for liability arising out of its car leasing activities in the absence of contra evidence. Such a belief on the part of Holiday Car Leasing would certainly deter it from procuring sufficient coverage, to its substantial detriment. "[A]n insurance company may by its conduct or dealings apart from the policy itself be estopped from denying that coverage has been furnished for a risk which the insured has been led to believe is protected under the policy." (*Ivey* v. *United National Indemnity Company* (9th Cir. 1958) 259 F.2d 205, 208.)

In the instant case, however, it is clear that Middlesex itself intended to cover Holiday Car Leasing. This is indicated in the "Umbrella" policy's "Schedule of Underlying Insurance," which not only includes "Automobile Liability" in the amounts stated for bodily injury, but *specifically references* the "Multi-Cover" policy by number and effective dates. Taken together with the requirement of underlying insurance

discussed *ante*, the clear indication is that beyond merely requiring underlying insurance, the "Commercial Umbrella" policy, and Middlesex, contemplated that the "Multi-Cover" policy *itself constituted* the underlying insurance required. Furthermore, counsel for Middlesex explicitly assert in their brief that the Middlesex "Multi-Cover" policy "was the very policy contemplated by the Commercial Umbrella policy as the underlying insurance." Such an interpretation presupposes a basically valid contract, and indicates the company's belief that the policy was not void due to the lack of any insurable interest. An insurer is bound by its interpretation of its own policy. (*Crump* v. *Northwestern Nat. Life Ins. Co.* (1965) 236 Cal.App.2d 149, 157 [45 Cal.Rptr. 814].)

Respondent argues that this is a judgment roll appeal; therefore, there can be no review of evidentiary matters, citing *Crummer* v. *Zalk* (1967) 248 Cal.App.2d 794, 796 [57 Cal.Rptr. 185] and *Williams* v. *Inglewood Board of Realtors* (1963) 219 Cal.App.2d 479, 481 [33 Cal.Rptr. 289].

Here, however, there was a motion to augment the record by the production of a partial reporter's transcript. This court, after considering the affidavits of opposing counsel, denied the motion. It was determined that the proffered additional record would produce no further extrinsic evidence bearing upon the construction of the policies under consideration. To extend a record uselessly is not required. In addition, our construction of the policies does not require the dependence upon evidence outside the policies.

The remaining arguments of respondent are fully answered in the analysis heretofore stated.

The judgment is reversed.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied March 31, 1981, and respondent's petition for a hearing by the Supreme Court was denied May 13, 1981.